# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| AKHTER B. HOSSAIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 10-713-CG-B |
| | ) |
| JOHN W. STEADMAN, et. al., | ) |
| | ) |
| Defendants. | ) |

## <u>ORDER</u>

This matter is before the court on the motion for summary judgment of the defendants, John W. Steadman, in his individual capacity and in his official capacity as Dean of the College of Engineering of the University of South Alabama ("Steadman"), and Bob Riley, Joseph Morton, Christie Miree, John M. Peek, Dr. Stephen P. Furr, Bettye R. Maye, James P. Nix, Bryant Mixon, Dr. Scott A. Charlton, Larry D. Striplin, Jr., J. Cecil Gardner, Samuel L. Jones, Arlene Mitchell, Dr. Stephen H. Stokes, Donald L. Langham, Judge Kenneth O. Simons, and James A. Yance, in their official capacities as trustees of the University of South Alabama (the "trustees") (collectively, the "defendants"). (Doc. 26). The plaintiff, Dr. Akhter B. Hossain ("Hossain"), filed an opposition to summary judgment (Doc. 34), to which the defendants filed a reply brief (Doc. 41). For the reasons explained below, the defendants' motion for summary judgment is due to be **GRANTED** as to all claims and all parties.

1

# I.    FACTUAL BACKGROUND

Hossain asserts that Steadman and the trustees unlawfully discriminated against him on the basis of his race, ancestry, and ethnicity in violation of 42 U.S.C. § 1981 by not granting tenure to Hossain, thereby terminating him from employment as a professor of civil engineering at the University of South Alabama ("USA").  (Doc. 1, pp. 6-7).  Hossain brings his § 1981 claim via 42 U.S.C. § 1983 because USA is a public university, and Steadman is an employee of USA and is being sued both in his official and individual capacity.  Id.   Hossain also claims that Steadman treated him differently because of his race, ancestry and ethnicity in violation of his rights under the Equal Protection Clause of the 14th Amendment to the United States Constitution (the "Equal Protection Clause") by not submitting his scholarship to three external reviews prior to his tenure information being evaluated.  Id. at 7-8.  Finally, Hossain asserts that the trustees unlawfully discriminated against him on the basis of his national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., by not granting him tenure, in discharging him, and denying him other terms, conditions, and privileges of employment.  Id. at 8-9.

Hossain is an Asian male and is from the nation of Bangladesh.  (Doc. 25-3, p, 2).  He was hired in August 2003 as a full-time probationary tenure-track assistant professor in the Civil Engineering department of USA's College of Engineering.  Id. A condition of his probationary status was that Hossain be reappointed on a year-

by-year basis during a six-year probationary period.  Id.  It is not disputed that USA did not promise or guarantee tenure to Hossain when he was hired.  Id.

The relevant administrative hierarchy at USA was as follows: Hossain reported to the chairman of the civil engineering department, which when Hossain was hired in August 2003 was Dr. Joseph Olsen ("Olsen").  Doc. 39, p. 2.  Dr. Kevin White ("White") later became the department chairman in 2005.  Id.  The department chairman reported to the dean of the College of Engineering, Steadman.  Doc. 25-3, p. 3.  Steadman reported to the Senior Vice President of Academic Affairs ("SVPAA"), Dr. David Johnson.  Id.  Johnson, in turn, reported to the president of the university.  Id.

In 2006, Hossain's third year as a probationary tenure-track faculty member, Hossain received a pre-tenure review.  (Doc. 39, p. 3).  The USA Faculty Handbook requires that "the department chair … conduct the evaluation in consultation with the tenured faculty of the department or comparable academic unit," and " … meet with the faculty member to discuss the results of the review."  (Doc. 26-3, p. 96).  Accordingly, White reviewed and evaluated three binders of material submitted by Hossain and consulted with the tenured faculty members of the civil engineering department: Dr. Joseph Olsen, Dr. Stephen Douglass, and Dr. Husan Anwam Omar.  (Doc. 39, p. 3), (Doc. 26-5, p. 3, ¶ 5).  Upon completion of this first pre-tenure review, White met with Hossain to discuss the results.  (Doc. 39, p. 3).  White considered Hossain's review to be "borderline," finding that his teaching was acceptable, giving him a score of 90 out of 100, but also noting some concern

regarding Hossain's research and scholarship efforts, giving him a score of 55 out of 100. (Doc. 26-5, p. 4). White strongly encouraged Hossain to increase his publication work, and recommended that Hossain be reappointed for the following academic year, with the caveat that Hossain undergo a second pre-tenure review the following year. Id.

One year later, Hossain received his second pre-tenure review in the Spring of 2007. (Doc. 39, p. 5). He met both with White and Steadman, who told Hossain that his teaching remained acceptable and noted an improvement in his research and scholarship efforts. (Doc. 39, p. 6). White still expressed some concerns about Hossain's "ability to establish a viable, sustainable peer-acknowledged research program in terms of external research funding and publications sufficient to support an award of tenure."[1] (Doc. 26-5, p. 5, ¶ 9). Steadman told Hossain to keep concentrating on writing journal articles. (Doc. 26-3, p. 29).

In September 2008, Hossain applied for tenure and promotion by submitting a tenure dossier detailing information about his accomplishments. (Doc. 25-3, p. 7). At White's request, Olsen, the chair of the civil engineering department's promotion and tenure committee (the "department committee"), selected three external reviewers and requested written reviews, as required by the USA Faculty Handbook. (Doc. 25-3, p. 7), see also Doc. 26-3, p. 98. By the time the department

---

[1] Hossain asserts that in his 2008 annual evaluation, White gave Hossain "an almost perfect score in research and scholarship (9.75) and well-above average score in teaching (8.3) and service." (Doc. 39, p. 7). However, although Hossain cites "Hossain Aff. ¶21" and "Hossain Dep. Ex. 10" the court cannot find any May 2008 evaluation for Hossain.

committee met to review Hossain's tenure application, however, only one external review had been returned.  Id.  The department committee opted to press forward with its review of Hossain's application, anyway.  Id.

The department committee consisted of three senior, tenured professors from the civil engineering department: Drs. Olsen, Douglass, and Omar.  Id.  The department committee voted 2-1 against tenure and promotion, concluding that Hossain's record in obtaining funded research was marginal.  (Doc. 39, p. 10).  After voting against tenure, the department committee submitted a report to White, who conducted his own independent review and also recommended against tenure and promotion for Hossain in a report addressed to Steadman.  (Doc. 25-3, p. 8).

A separate collegiate committee conducted yet another review of Hossain's application, and, in a report addressed to Steadman recommended 5-2 against tenure and promotion for Hossain.  (Doc. 39, p. 10).  Steadman then independently reviewed Hossain's application and recommended against tenure to Johnson, stating that "Dr. Hossain has a reasonable, but marginal, record of scholarship as it relates to publications [and] ... in both publications and in external funding, the record of scholarship falls below what is expected for tenure and promotion to associate professor."  (Doc. 39, p. 16).  After these various recommendations had been submitted, Johnson notified Steadman that the review process should start over from the beginning because the departmental committee had considered only one external review, rather than the required three.  Id.

In the second round of review, this time with the requisite three external reviews included, the departmental committee again voted against tenure and recommendation by a 2-1 vote, stating that Hossain's record in obtaining funded research was "at best marginal." (Doc. 25-3, pp. 8-9). Similarly, White again recommended against tenure, and as before, expressed concerns about Hossain's ability to develop a "long-term, sustainable research program indicative of a significant scholarly or creative career." Id. at 9. The collegiate committee reversed itself and recommended tenure and promotion by a 5-2 vote. (Doc. 39, p. 20). Steadman recommended against tenure and promotion, citing what he considered to be (1) a decline in Hossain's teaching effectiveness, as evidenced by five years of student evaluations showing that Hossain's percentile rankings among faculty in the College of Engineering dropped from the 75th percentile to the 32nd percentile; (2) a "marginal" record of scholarship as it related to publications, which Steadman described as "below what is expected in the College of Engineering" ; and (3) a lack of external funding of proposed research projects. (Doc. 26-3, pp. 223-224).

Upon receiving this second round of recommendations, Johnson conducted his own review and decided not to recommend tenure and promotion for Hossain. (Doc. 26-6, p. 3). The university president approved Johnson's recommendation, and on May 4, 2009, USA issued a letter of non-reappointment to Hossain. (Doc. 25-3, p. 11).

After receiving the non-reappointment letter, Hossain met with Johnson and alleged that his tenure and promotion review had been unfair due to certain

procedural violations of the USA Faculty Handbook: (1) three external reviews were not obtained for Hossain's first tenure review; (2) Hossain was not notified of the names of the three external reviewers for his second tenure review; and (3) White delayed including Hossain's most recent student evaluations during Hossain's second review. <u>Id.</u> Johnson informed Hossain of USA's grievance procedure, but Hossain did not file a grievance. <u>Id.</u> On December 22, 2010, Hossain filed this action with the court. <u>See</u> Doc. 1.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" <u>Bailey v. Allgas, Inc.</u>, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."
See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving
that no genuine issue of material fact exists.  O'Ferrell v. United States, 253 F.3d
1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the
court must view all evidence in the light most favorable to the non-moving party,
and resolve all reasonable doubts about the facts in its favor.  Burton v. City of
Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds might
differ on the inferences arising from undisputed facts, then [a court] should deny
summary judgment."  Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532,
1535 (11th Cir. 1989) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750
F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-
moving party "must make a sufficient showing to establish the existence of each
essential element to that party's case, and on which that party will bear the burden
of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994)(citing
Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-
movant must "demonstrate that there is indeed a material issue of fact that
precludes summary judgment."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608
(11th Cir. 1991).  The non-moving party "may not rely merely on allegations or
denials in its own pleading; rather, its response must . . . set out specific facts
showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 432 Fed.Appx. 867,
870 (11th Cir. 2011) (quoting Fed.R.Civ.P. 56(e)(2)).  "A mere 'scintilla' of evidence

supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

## III.   LEGAL ANALYSIS

Hossain's three claims are brought pursuant to (1) Title VII of the Civil Rights Act of 1964, (2) 42 U.S.C. § 1981 via § 1983, and (3) the Equal Protection Clause, also via § 1983.  (See Doc. 1).

Title VII prohibits an employer from discharging or otherwise discriminating against a person based on race.  42 U.S.C. § 2000e–2(a)(1).  The statute was designed to bar not only overt employment discrimination, "but also practices that are fair in form, but discriminatory in operation."  Pullman-Standard v. Swint, 456 U.S. 273, 276 (1982) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971)). Thus, Title VII claims may be based either on intentional discrimination or facially neutral policies that "nonetheless discriminate in effect against a particular group." Id.

Likewise, 42 U.S.C. § 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts. Ferrill v. The Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999). Unlike Title VII, however, § 1981 liability must be founded on purposeful discrimination. See General Building Contractors Association v. Pennsylvania, 458 U.S. 375 (1982); Lincoln v. Board of Regents of the University System of Georgia, 697 F.2d 928, 935 n. 6 (11th Cir. 1983). Thus, a showing of disparate impact through a neutral practice is insufficient to prove a § 1981 violation. See id. at 388 (recognizing that the drafters of § 1981 were not concerned with practices that were facially neutral).

The Equal Protection Clause, as its name suggests, prohibits states or state actors from denying the equal protection of the laws to any person. U.S. Const. amend. XIV. The mandate of the Equal Protection Clause essentially is "that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). The Equal Protection Clause is enforced through 42 U.S.C. § 1983, which was enacted by Congress in order to enforce the Fourteenth Amendment. Conn v. Gabbert, 526 U.S. 286, 290 (1999) ("Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."). A cause of action pursuant to § 1983 requires proof that a person acting under color of law deprived the plaintiff of a federal or constitutional right. Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1522 (11th Cir. 1995).

The test for intentional discrimination in suits under § 1981, § 1983, and Title VII are the same. Bryant v. Jones, 575 F.3d 1281, 1296, n. 20 (11th Cir. 2009) (noting that § 1983 equal protection claims and Title VII discrimination claims are subject to the same standards of proof and the same analytical framework). Since the legal standards governing each of these categories of claims are the same, it is therefore unnecessary to evaluate Hossain's causes of action separately. See Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008); Pears v. Mobile County, 645 F.Supp.2d 1062, 1089 (S.D.Ala. 2009).

The plaintiff in an action brought pursuant to the § 1981, § 1983, or Title VII has the burden of establishing a prima facie case of employment discrimination by a preponderance of the evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This prima facie case can be established in any one of three ways: (1) by presenting direct evidence of discriminatory intent; (2) by presenting circumstantial evidence of discriminatory intent through the McDonnell Douglas test; or (3) by demonstrating through statistics a pattern of discrimination. Earley v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

Where, as here, the plaintiff wishes to prove a claim of discrimination through circumstantial rather than direct evidence, the court evaluates the claims using the burden-shifting framework established by the Supreme Court in McDonnell Douglas, 411 U.S. 792, supra. Under the McDonnell Douglas framework, the plaintiff must satisfy the initial burden under the statute by establishing a prima facie case of intentional discrimination. Smith v. Lockheed–

Martin Corporation, 644 F.3d 1321, 1324–25 (11th Cir. 2011).  To do so, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) his employer treated him less favorably than similarly situated individuals outside of his protected class.  Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).  With respect to this last showing, "the individuals must be similarly situated in all relevant respects besides race [or ancestry, or ethnicity], since different treatment of dissimilarly situated persons does not violate civil rights laws."  Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1273-1274 (11th Cir. 2004) (internal citations and quotation omitted).

To state a prima facie case of discriminatory termination, a plaintiff must show that he (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was treated less favorably than a similarly-situated individual outside of his protected class.  Walton–Horton v. Hyundai of Alabama, 402 Fed. Appx. 405, 408 (11th Cir., 2010) (citing Burke–Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006)).

If the plaintiff is successful in proving a prima facie case, then a presumption of discrimination is raised and the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its employment action.  Smith, 644 F.3d at 1324–25.  If the defendant meets this burden, then the presumption of discrimination is rebutted and disappears.  Id.  The inquiry then proceeds to a "new level of specificity," whereby the plaintiff must prove by a preponderance of evidence

that the defendant's reason is a mere pretext for unlawful discrimination.  Id. at 1326–27 (citations omitted).  "Thus, if a jury reasonably could infer from the evidence presented that the employer's legitimate justification is pretextual, the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination.  Id. at 1326–27 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)).

### (1)     The **Prima** **Facie** Case

There is no dispute that Hossain is a member of a protected class, as he is an Asian male from Bangladesh.  Nor do the parties appear to dispute that the decision not to grant tenure and promotion to Hossain was an adverse employment action. See Doc. 25-3, pp. 19-20; Doc. 39, pp. 27-29.  Hossain and the defendants do dispute whether or not Hossain can point to valid comparators who were treated more favorably.  (Doc. 25-3, p. 19; Doc. 39, p. 27).

Hossain points to Drs. Thomas Thomas, Samuel Russ, Kuang-Ting Hsiao and Aurangzeb Khan as comparators, arguing that each received tenure and promotion but that none is Bangladeshi.[2]  (Doc. 39, p. 27).  However, Drs. Thomas, Russ, and Khan each worked in the Department of Electrical and Computer Engineering (Doc. 25-13, pp. 6 and 75), while Dr. Hsiao worked in the Department of Mechanical Engineering (Doc. 25-13, p. 98).  Hossain, on the other hand, worked in the

---

[2] For the sake of argument, the court will ignore the fact that Dr. Hsiao's name is apparently Asian, which tends to undercut Hossain's race discrimination claims under § 1981 and § 1983.

Department of Civil Engineering (Doc. 1, p. 3). Thus, because Thomas, Russ, Hsiao and Khan were in different departments, had different department chairmen, and were reviewed, at least in part, by different evaluators (see Doc. 25-13, pp. 80, 108, 121, and 149), they are not proper comparators for Hossain. See, e.g., Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) ("In order to meet the comparability requirement a plaintiff is required to show that he is similarly situated in all relevant aspects to the non-minority employee.") ; see also Ren v. University of Central Florida Board of Trustees, 390 F.Supp.2d 1223, 1229-31 (M.D. Fla. 2005).

Hossain argues that Ren, supra, is inapplicable to this case, because the defendants in Ren argued that the university department to which the plaintiff sought tenure and promotion had higher standards than the department where plaintiff's purported comparators sought promotion. (Doc. 39, p. 28). According to Hossain, USA and Steadman have not provided evidence that the civil engineering department had higher tenure and promotion standards than the other departments in the College of Engineering, making Ren inapposite. (Id. at 28-29). Unfortunately for Hossain, however, he neglects to mention that the Ren court also based its ruling on the fact that the plaintiff and her purported comparator had a different supervisor and different evaluators, stating that "[b]ecause [plaintiff] and [her purported comparator] held positions in different departments, the … tiers of the evaluation process were presumably different. Thus, in the final analysis, [plaintiff] and [her purported comparator] appear to share very little. They held

14

positions in different departments, had different supervisors, [and] were reviewed, at least in part, by different evaluators …" Ren, 390 F.Supp.2d at 1230. Thus, Ren is perfectly relevant, because these facts are directly analogous to Hossain and his alleged comparators. Accordingly, the court finds that Hossain has failed to identify a comparator necessary to make out an prima facie case of discrimination.

### (ii) Non-Discriminatory Reason/ Pretext

While Hossain's failure to establish a prima facie case is dispositive of his racial, ancestral, and ethnic discrimination claims (under § 1981 and § 1983) and his national origin discrimination claim (under Title VII), the court finds that even if Hossain were able to point to a comparator, the defendants have proffered a legitimate, nondiscriminatory reason for not granting tenure (and thereby terminating Hossain's employment) for which Hossain has not established pretext.

The defendants' burden in this regard is "exceedingly light." Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (quotation omitted). Thus, to comply with § 1981, § 1983, or Title VII, the defendants "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984) Courts "are not in the business of adjudging whether employment decisions are prudent or fair," but rather, their "sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).

Steadman detailed his reasons for recommending against tenure and promotion to Hossain in an April 14, 2009, memorandum to Johnson, the SVPAA. (Doc. 26-3, pp. 223-224). Among the reasons stated in Steadman's memorandum were (1) a decline in Hossain's teaching effectiveness, as evidenced by five years of student evaluations showing that Hossain's percentile rankings among faculty in the College of Engineering dropped from the 75th percentile to the 32nd percentile; (2) a "marginal" record of scholarship as it relates to publications, which Steadman described as "below what is expected in the College of Engineering" ; and (3) a lack of external funding of proposed research projects. Id. Deficient scholarship has been held by other circuits to be a legitimate non-discriminatory reason to deny tenure and promotion in a university setting. Geevarghese v. Cahill, 983 F.2d 1066 (Table), 1992 WL 361369 at *5 (6th Cir. 1992) (citing Gutzwiller v. Fenik, 860 F.2d 1317 (6th Cir. 1988)).

Hossain argues that Steadman's reasons are pretextual, and claims to have introduced circumstantial evidence that proves that the defendants' articulated reasons for denying him tenure and promotion were "incoherent and not reasonable in these circumstances." (Doc. 39, p. 32). However, in two pages of argument on this point, Hossain does not cite to any portions of the record.

Furthermore, Hossain's purported circumstantial evidence focuses on Dr. White, the department chairman, rather than Steadman. Id. Hossain claims (again, with no citation to the record) that White "repeatedly told Dr. Hossain over the years that his performance was good," that "Dr. White did not suggest that Dr.

Hossain make additional proposals or state that he needed more funding," that "Dr. White repeatedly failed to insure that the [proper tenure review] process was followed," that "Dr. White failed to insure that three external reviews were requested or received," and that the "introduced evidence … suggests dishonesty by both Drs. White and Olsen in administering the tenure and promotion process." Id. at 31-32. This line of argument ignores the fact that Steadman and the trustees are the defendants, not White. Nevertheless, even if the court accepts Hossain's allegations as true, they do not contain sufficient evidence of racial, ancestral, or ethnic animus by White or Steadman, such that Steadman's proffered reasons for recommending against tenure and promotion could reasonably be called pretextual.

The one piece of evidence that does suggest even the possibility of discrimination against Hossain based upon race or national origin is the deposition testimony of Dr. Ali Engin, a tenured full professor of engineering at USA. (Doc. 26-7). Engin felt that the criticisms of Hossain's record in obtaining funded research was more appropriate for an already-tenured associate professor seeking promotion to full professor, rather than a probationary-track assistant professor seeking tenure and promotion to associate professor. (Doc. 26-7, p. 7). Engin testified that he was concerned that "there's some sort of discrimination going on here," id. at 8; however, he did not point to any statement from Steadman evincing a discriminatory motive, nor any fact beyond his own ill-defined concerns about the collegiate committee, none of whose members are defendants in the present action. Furthermore, Engin also testified that Steadman called him after the collegiate

17

committee voted and said that he "welcomed" a minority report as a means of communicating the views of the collegiate committee concerning the vote on Hossain's tenure application.[3] Id. at 7.

The final nail in the coffin of Hossain's claim is his admission at deposition that he has no evidence that Steadman's reasons for recommending against tenure and promotion were anything other than those expressed in his memorandum to Johnson. (Doc. 26-3, pp. 37-38). Hossain simply stated that he "strongly believe[d]" that Steadman's recommendation against tenure and promotion was borne of a discriminatory motive. Id. The court finds that no reasonable juror could infer pretext from Hossain's speculation.

Boiled down to its essence, Hossain's argument in favor of pretext is that "[d]efendants' articulated reason for the decision to deny him tenure and promotion was incoherent and not reasonable in these circumstances." (Doc. 39, p. 32). Yet the preponderance of circumstantial evidence presented by Hossain in his opposition brief does not reveal anything other than Hossain's bitter disagreement with USA's reasoning and decision. The fact that Hossain thinks more highly of his performance than his employer did is beside the point. Alvarez, 610 F.3d at 1266.

---

[3] Hossain alleges in his opposition brief that "Dr. Engin was so upset with the handling of Dr. Hossain's application that he made a report to the college on April 28, 2009." (Doc. 39, p. 24). However, this is a misleading characterization of what Engin said in the cited excerpt of his deposition. See Doc. 34-5, p. 11. In his testimony, Engin discussed a report on the promotion and tenure committee that he was obliged to give at a routine meeting of the faculty of the College of Engineering. Id. As part of his report, Engin stressed to department chairs the importance of obtaining three external reviews of each tenure applicant. Id. That he had Hossain in mind is clear from Engin's testimony; however, Hossain inaccurately implies that the very reason for the report was to discuss Hossain's application before the college faculty.

"The question is whether [Hossain's] employers were dissatisfied with [him] for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about [Hossain] as cover for discriminating against [him] because of [his Bangladeshi] origin." Id. (citing Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (inquiry is limited to whether employer believed employee was guilty of misconduct and if so, whether that was reason behind discharge; that employee did not actually engage in misconduct is irrelevant)).

### (iii)   "Convincing Mosaic"/ Inference of Discrimination

The Eleventh Circuit recently instructed that, "[e]stablishing the elements of the McDonnell Douglas framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).   Hossain cites Lockheed-Martin for the proposition that a pattern of behavior by Drs. Olsen, White, and Steadman which, "viewed together, is sufficient to create an inference of discrimination at summary judgment." (Doc. 39, p. 29). What Hossain apparently is alluding to is case law which establishes that a triable issue of fact exists " 'if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.' " Lockheed-Martin at 1328 (quoting Silverman v. Board of Education, 637 F.3d 729, 733 (7th Cir. 2011)).

Unfortunately for Hossain, the record he has produced in this case "is more than a few tiles short of a mosaic, let alone a convincing one." Alkhatib v. Steadman, et. al., 2011 WL 5553775, *8 (S.D. Ala. Nov. 15, 2011). In Lockheed, the Eleventh Circuit decided that the plaintiff could survive summary judgment despite the fact that he could not point to a comparator, because the plaintiff produced a significant evidentiary record (the "convincing mosaic") that Lockheed-Martin had considered the plaintiff's race in their decision to terminate him. This evidence included a (i) spreadsheet which listed employees by name and race; (ii) a documented history of inconsistent treatment of white and African-American employees; and (iii) a television news expose covering racial tension and workplace violence at Lockheed-Martin.

As discussed, supra, the circumstantial evidence that Hossain has provided falls well short in comparison to the significant record provided by the Lockheed plaintiff, and certainly does not form a "convincing mosaic." Hossain has offered the Court nothing with which to set aside or look beyond the McDonnell Douglas framework, and accordingly cannot survive summary judgment on the issue of racial, ancestral, ethnic, or national origin discrimination.

This court need not address the dispute between Hossain and the defendants regarding dismissal of the counts against the trustees (Doc. 25-3, p. 30 and Doc. 39, p. 35) because Hossain has failed to establish a prima facie case against any of the defendants under § 1981, § 1983, or Title VII, and because he has failed to prove

that the defendants' legitimate, nondiscriminatory reasons for not granting tenure were pretextual.

## IV.    CONCLUSION

Upon a thorough analysis of all matters presented, the court concludes that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  The defendants' motion for summary judgment (Doc. 25) is therefore **GRANTED** as to all claims and as to all parties.

**DONE** and **ORDERED** this 25th day of January, 2012.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE